*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Disciplinary Matter Involving | ) | Supreme Court No. S-15450 |
| | ) | |
| DEBORAH IVY, | ) | ABA File No. 2010D233 |
| | ) | |
| Respondent. | ) | O P I N I O N |
| | ) | |
| | ) | No. 7002 – May 1, 2015 |

Appeal from the Alaska Bar Association Disciplinary Board.

Appearances: Charles E. Cole, Law Offices of Charles E. Cole, Fairbanks, for Respondent. Kevin G. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, Special Bar Counsel for Alaska Bar Association.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

The Alaska Bar Association Disciplinary Board recommends disbarment of Deborah Ivy for making false statements as a party to litigation in violation of Alaska Rules of Professional Conduct 3.3, 3.4, and 8.4 and Alaska Bar Rule 15. We agree the record establishes that Ivy made false statements in violation of Professional Conduct Rule 8.4 and Bar Rule 15. But we conclude that Rules 3.3 and 3.4 do not apply because they are intended to govern attorneys acting as advocates and not in their personal

capacities. We therefore remand this matter to the Board for reconsideration of its recommended sanction.

## II. FACTS AND PROCEEDINGS

Deborah Ivy and her brother, David Kyzer, were involved for several years in now-settled litigation, including the Kyzer Partnership Litigation[1] and the Kyzer/McManamin Litigation.[2] This litigation involved the dissolution and unwinding of business organizations and joint property holdings of Ivy, Kyzer, their two sisters, and others.[3] In the Kyzer Partnership Litigation, Ivy counterclaimed against Kyzer, alleging, among other things, that Kyzer created a hostile work environment and committed "intentional tortious acts," by behaving abusively toward her for decades. Relations between Kyzer and Ivy grew so acrimonious during the litigation that a no-contact order was issued in December 2007, prohibiting in-person or telephone contact between the parties without an attorney present and prohibiting each party from coming within 500 feet of the other's residence.

During the course of the litigation, Ivy alleged and testified that Kyzer made improper contact with her on three occasions, two of which are relevant to this appeal. Kyzer filed a grievance with the Alaska Bar Association alleging Ivy fabricated these incidents and violated the Professional Conduct Rules by testifying falsely about them.

---

[1] This was superior court case number 3AN-05-09242 CI.

[2] This was superior court case number 3AN-07-10578 CI.

[3] In the Kyzer Partnership Litigation, Kyzer sued Ivy individually and on behalf of The Kyzer Group. In the Kyzer/McManamin legislation, the plaintiffs were John McManamin, Nancy McManamin, Robin McManamin, and Jerry Ulmer. The four Kyzer siblings, The Kyzer Group, and Deborah Ivy, LLC were the defendants.

The first such incident allegedly occurred December 29, 2007, when Ivy claims Kyzer stalked her at a women's clothing store. Ivy was scheduled to have her deposition taken in the McManamin litigation in January. Ivy did not appear at the scheduled date; the deposition did not occur until March 13, 2008. At the deposition, Ivy testified about the alleged stalking. According to Ivy, she was shopping at the store from approximately 3:15-3:45 p.m., saw Kyzer in his car outside the store, and completed her shopping while continuing to look out the window at Kyzer. Ivy claimed that after completing her purchase, she hurried to her car, and while she was backing out, Kyzer's vehicle pulled up next to her so close that she thought they would collide. She testified she could see Kyzer in his car "focused, intent, locked in to me" and her "reaction was just to flee." Ivy stated that she and Kyzer then drove off in different directions.

Ivy testified she could not recall whether she contacted the police that day. She stated she did not file a police report that day and could not recall whether she asked anyone else to file one for her. She recalled contacting the police multiple times about the incident but could not remember when. But she provided a detailed statement to a police officer over a week later. The police report states, "[I]f what she provided could be corroborated, it still would not amount to criminal activity." The police officer encouraged her to apply for a domestic violence restraining order. The police report stated that Ivy's attorney at the time called the police officer after hearing from Ivy about their conversation. The officer told Ivy's attorney that he would be willing to request a telephonic hearing for the restraining order because Ivy was afraid to come to the courthouse.

Ivy also alleged Kyzer assaulted her in a courtroom on June 29, 2010, before a hearing in the Kyzer/McManamin Litigation. According to Ivy's affidavit:

Just prior to the commencement of the hearing, I was standing behind the bar, waiting to come forward and join my attorneys . . . , who were in front of the bar . . . .

. . . David Kyzer surreptitiously approached me from the rear, and using force, repeatedly thrust his groin into my buttocks area.

. . . .

. . . I not only felt his groin and crotch (penis), but he also pushed [his] entire frontal area extremely hard against me, from his upper chest/lower neck all the way through his legs (which were so entangled that he tripped while disengaging himself).

. . . His pushing/pressure during the attack caused me pain . . . .

. . . .

. . . While he was attacking me, his mouth was near my ear, and he was talking into my ear, calling me "Debbie."

. . . .

. . . I [cried] out[,] "[D]on't touch me."

Ivy alerted her attorney, who reported to the judge that Kyzer had "physically accost[ed]" Ivy. The judge reminded the parties about the requirements of the no-contact order and proceeded with the hearing.

Two days after the hearing, Ivy emailed her attorney details of the alleged assault. This email appears to be the first documented allegation the assault was sexual. Ten days later Ivy's attorney filed a "Notice of Sexual Assault" with the court, accompanied by Ivy's affidavit. Subsequently, both Kyzer and Ivy obtained a copy of the courtroom security video of this incident.

In December 2010 Kyzer filed a grievance with the Alaska Bar Association against Ivy, alleging she violated Alaska Professional Conduct Rules 3.1, 3.3(a)(1) and

(3), and 8.4(a) through (c) by falsely testifying that Kyzer stalked and assaulted her.[4] Special Bar Counsel Kevin Clarkson was appointed to review the grievance. He found there was probable cause to believe Ivy committed the alleged violations. The Board Discipline Liaison approved the filing of a Petition for Formal Hearing, and the Petition was filed in March 2012. The Petition charged Ivy with the same violations as Kyzer's grievance, except it did not charge her with violating Rule 3.1. It also charged Ivy with violating Rule 3.4(b) and Alaska Bar Rule 15(a)(3).[5]

An Area Hearing Committee was appointed to conduct the hearing, which was held in February and March 2013. The Committee found Kyzer had not stalked Ivy and suggested Ivy may have fabricated the incident in an effort to avoid her 2008 deposition. The Committee found Ivy's testimony about the alleged stalking was not credible and her description of the movements of Kyzer's vehicle in the clothing store parking lot was "not physically possible." The Committee stated, "When confronted with this physical reality during cross-examination, Ms. Ivy fabricated a new story . . . ." The Committee found Ivy continued to testify falsely at the hearing and did not admit her previous testimony was mistaken.

The Committee credited testimony from Kyzer and his wife that they were driving a different vehicle that day to run errands (for which they provided receipts), did not go to the women's clothing store, and returned home to watch a football game before Ivy arrived at the store. The Committee also credited the testimony of the Kyzers' two

---

[4] Ivy also had alleged under oath that Kyzer trespassed on her property. Kyzer's grievance charged Ivy with fabricating this incident as well. Because there was conflicting evidence concerning this incident, Ivy was found not to have violated any rule by testifying about it, so it is not at issue on appeal.

[5] Bar Rule 15(a)(3) makes "knowing misrepresentation of any facts or circumstances surrounding a grievance" grounds for discipline regardless of whether the conduct "occurred in the course of an attorney-client relationship."

sons, who testified Kyzer was home in the afternoon to watch a pre-game show and football game. And it relied on the testimony of two store clerks who helped Ivy that day; they testified Ivy never told them she was in a hurry and did not look worried or nervous. The Committee found by clear and convincing evidence Ivy knowingly provided false testimony at the deposition and hearing.

The Committee also found there was clear and convincing evidence Ivy knowingly provided a false affidavit about the alleged courtroom assault. The Committee found the courtroom security videotape accurately depicted the events leading up to the court hearing and that although Kyzer's "hip or buttocks may have brushed Ms. Ivy's right hip" as he passed by her to take his seat, the other allegations in Ivy's affidavit were false. The Committee concluded:

> It is not reasonably possible for someone to have experienced the inadvertent and minor bump of a brother attempting to be excused and then to pass by his sister, as is seen on the courtroom security videotape . . . , and then to honestly or mistakenly believe that they had been sexually assaulted . . . .

The Committee noted that Ivy testified she had not been mistaken about the incident and denied imagining or hallucinating it. Instead, the Committee found she continued to fabricate new evidence at the disciplinary hearing, producing pants she claimed to have worn that day and contending they contained marks evidencing the sexual assault. The Committee found, "She also newly claimed that she had gone to a doctor who had diagnosed a bruised 'pubic bone' as a result of her encounter."

The Committee concluded Ivy violated Professional Conduct Rules 3.3(a)(1) and (3); 3.4(b); 8.4(a), (b), and (c); and Alaska Bar Rule 15(a)(3). The Committee recommended that the appropriate sanction was disbarment. Ivy appealed the Committee's decision to the Board of Governors in July 2013; the Board adopted the Committee's findings and recommendation for disbarment in full. Ivy appeals.

## III. STANDARD OF REVIEW

"We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight."[6] "When the Board's findings of fact are appealed, the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous."[7] "We apply our independent judgment to questions of law and questions concerning the appropriateness of sanctions."[8]

## IV. DISCUSSION

### A. We Agree With The Board's Findings Of Fact.

Ivy challenges the factual findings concerning the alleged assault and stalking incidents made by the Committee and adopted by the Board. With respect to the alleged stalking incident, we note the Committee had the opportunity to observe the witnesses presented by both parties and make findings about their credibility. The Committee determined Ivy was not credible, whereas the Kyzers and the store clerks testified credibly. We generally will not disturb factual findings by an area hearing committee when the findings are based on conflicting evidence.[9] And Ivy fails to demonstrate that the Committee erred in weighing the witnesses' credibility. We concur with the Board's findings about the alleged stalking incident.

---

[6] *See In re Disciplinary Matter of Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (quoting *In re Disciplinary Matter of Shea*, 273 P.3d 612, 619 (Alaska 2012)) (internal quotation marks omitted).

[7] *Id.* (quoting *In re Disciplinary Matter of Rice*, 260 P.3d 1020, 1027 (Alaska 2011)) (internal quotation marks omitted).

[8] *Id.* (quoting *In re Shea*, 273 P.3d at 619) (internal quotation marks omitted).

[9] *Id.*

The Board's findings concerning the events in the courtroom are well supported by the courtroom video of the encounter between Kyzer and Ivy and the testimony presented to the Committee. We therefore adopt the Board's findings about the courtroom incident.

Ivy also argues the Bar Association did not prove by clear and convincing evidence that she "knew" that her testimony was false. In response, the Bar Association contends the Board's factual findings regarding each incident were supported by sufficient circumstantial evidence suggesting Ivy subjectively knew her testimony was false.

The Rules of Professional Conduct define "knowingly" as "actual knowledge of the fact in question," adding that "[a] person's knowledge may be inferred from circumstances."[10] Accordingly, "knowingly" making a false statement for purposes of the Rules requires both that the statement be false and that the speaker know so. But even the speaker's subjective knowledge of a sworn statement's falsity can be proven through circumstantial evidence.[11]

We agree there was sufficient circumstantial evidence to establish that Ivy knew her testimony was untrue. The incredibility of Ivy's testimony about the alleged stalking, the testimony of six witnesses who contradicted her account, and her motive to lie collectively permit the inference she knew her testimony was false. Concerning the

---

[10] Alaska R. Prof. Conduct 9.1(h).

[11] *Cf. Adams v. Adams*, 131 P.3d 464, 466-67 (Alaska 2006) ("[W]e note that actual knowledge can be inferred from circumstantial evidence. Otherwise, it would be nearly impossible to establish actual knowledge in the context of a claim of fraudulent misrepresentation unless the affirming party admitted that it knew of the fraud."); *Jerrel v. State*, 851 P.2d 1365, 1370-71 (Alaska App. 1993) (holding that circumstantial evidence of state of mind could be used to establish whether defendant believed her statements were true).

courtroom incident, Ivy contends that she made a reasonable mistake due to her fear of Kyzer. But even after Ivy had the opportunity to see the video of what actually occurred, she continued to insist that Kyzer thrust against her repeatedly and caused her "excruciating" pain. She did not acknowledge a mistake or misperception. And she did not introduce any evidence that her ability to perceive events was compromised by a mental or physical impairment.

We agree with the Board's conclusion that Ivy's testimony is objectively false and that she did not credibly explain that she mistakenly believed it was true.

## B. Rules 3.3 And 3.4 Do Not Apply To An Attorney's Actions In Her Personal Capacity.

The Alaska Rules of Professional Conduct are organized in several sections, including *Client-Lawyer Relationship*, *Counselor*, *Advocate*, *Transactions With Persons Other Than Clients*, and *Maintaining The Integrity Of The Profession*.[12] Rule 3.3, regarding "Candor Toward the Tribunal," is in the section titled Advocate. Rule 3.3(a)(1) provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Rule 3.3(a)(3) provides that a lawyer shall not knowingly "offer evidence that the lawyer knows to be false."

Rule 3.4, regarding "Fairness to Opposing Party and Counsel," is in the same section, titled Advocate. Rule 3.4(b) provides, "A lawyer shall not falsify evidence" or "counsel or assist a witness to testify falsely."

Rule 8.4, regarding "Misconduct" is in the section titled *Maintaining the Integrity of the Profession*. This rule provides in pertinent part:

---

[12] There are additional sections entitled *Law Firms And Associations*, *Public Service*, and *Information About Legal Services*.

It is professional misconduct for a lawyer to:

    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

    (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . .

Ivy argues she did not violate Rules 3.3 and 3.4 because these rules are limited to a lawyer's conduct when representing a client. The Alaska Bar Association contends Rules 3.3 and 3.4 apply to all attorney conduct, whether the attorney is representing a client or acting in a personal capacity. To resolve this dispute, we must "interpret each part or section of [the rules] with every other part or section, so as to create a harmonious whole."[13]

---

[13]      *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1076 (Alaska 2009) (quoting *State, Dep't of Commerce, Cmty., & Econ. Dev., Div. Of Ins. v. Progressive Casualty Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007)) (internal quotation marks omitted); *see also People v. Santiago*, 925 N.E.2d 1122, 1129-30 (Ill. 2010) (construing a Rule of Professional Conduct in the context of the Rules as a whole "in order to make them harmonious and consistent."); *Carlson v. Workforce Safety & Ins.*, 765 N.W.2d 691, 700-01 (N.D. 2009) (stating that "canons of statutory construction" apply to the interpretation of the Professional Conduct Rules and that "[r]ules are construed as a whole, giving meaning to each word and phrase, if possible"); *LK Operating, LLC v. Collection Grp., LLC*, 331 P.3d 1147, 1158 (Wash. 2014) (en banc) ("When interpreting the meaning of any [Professional Conduct Rule], we apply settled principles of statutory construction. Our goal is to give effect to the intent behind the rule, which we discern, where possible, from the plain language of the rule at issue in the context of the [Professional Conduct Rule] as a whole." (citation omitted)).

The Alaska Rules of Professional Conduct are based on the Model Rules of Professional Conduct adopted by the American Bar Association (ABA).[14] The Alaska Bar Association relies on cases holding that other jurisdictions' versions of Model Rules 3.3 and 3.4 apply to an attorney's personal conduct.[15] These cases rely on strong policy arguments supporting high ethical standards for all attorneys, whether inside the courtroom or not.[16]

However, the ABA adopted some clarifying commentary to Rule 3.3 in 2002,[17] which we added to the Alaska Rules of Professional Conduct in 2009.[18] The Commentary now suggests that the rule is limited to the conduct of a lawyer in a representational capacity before a court or another tribunal:

---

[14] *See* AM. BAR ASS'N, STATE ADOPTION OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT AND COMMENTS 1 (2011), *available at* http://www.americanbar.org/content/dam/aba/migrated/cpr/pic/comments.authcheckd am.pdf.

[15] *See, e.g., People v. Albright*, 91 P.3d 1063, 1067-68 (Colo. 2003) (applying Rule 3.3 to misrepresentations about personal assets and income in lawyer's personal bankruptcy filing); *In re Disciplinary Action Against Fuller*, 621 N.W.2d 460, 469 (Minn. 2001) (per curiam) (applying Rule 3.4 to attorney's submission of misleading evidence in disciplinary proceeding).

[16] *See Disciplinary Counsel v. Robinson*, 933 N.E.2d 1095, 1102-03 (Ohio 2010) (per curiam) ("[I]n applying Prof. Cond. R. 3.4(a)[,] . . . we recognize that respondent's conduct, be it in a personal or professional capacity, demonstrates a lack of respect for the law that he has been sworn to uphold, thereby undermining public confidence in our justice system.").

[17] *See* Margaret Colgate Love, *The Revised ABA Model Rules of Professional Conduct: Summary of the Work of Ethics 2000*, 15 GEO. J. LEGAL ETHICS 441, 442-44, 464-66 (2002).

[18] *See* Alaska Supreme Court Order No. 1680 (Oct. 28, 2008); *see also* AM. BAR ASS'N, *supra* note 14.

This Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. . . . It also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition.

. . . .

This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences and secrets of the client, however, is qualified by the advocate's duty of candor to the tribunal.[19]

Our same order added clarifying commentary to Rule 4.1, regarding "Truthfulness in Statements to Others."[20] The text of that rule is not relevant to this dispute. But the commentary to Rule 4.1 now provides in part, "For dishonest conduct that does not amount to a false statement or for misrepresentations by a lawyer other than in the course of representing a client, see Rule 8.4."[21]

The Preamble to the Alaska Rules of Professional Conduct states that the commentary to each rule "explains and illustrates the meaning and purpose of the Rule."[22] "The [comments] are intended as guides to interpretation, but the text of each

---

[19]     Alaska R. Prof. Conduct 3.3 cmt.

[20]     *See* Alaska Supreme Court Order No. 1680 at 190-91 (Oct. 28, 2008).

[21]     Alaska R. Prof. Conduct 4.1 cmt. 1.

[22]     Alaska R. Prof. Conduct, Scope.

-12-                                                                    **7002**

Rule is authoritative."[23] Nonetheless, all of the cases that have considered the 2002 ABA

amendments conclude that the new commentary to Rule 3.3 is intended to limit the broad

language of that rule.

For example, the Iowa Supreme Court considered the application of rules

identical to Rules 3.3 and 3.4 to a lawyer's failure to disclose two pending contingent-fee

cases in a proceeding for dissolution of his marriage.[24] The court recognized that the

comments to Rule 3.3 suggest the rule applies only to an attorney acting in a

representational capacity.[25] The court also noted that the application of this commentary

was supported "by the fact that [the] rule is found in a section of the rules [titled]

'Advocate.' "[26] The Iowa court ultimately concluded that Rules 3.3 and 3.4 do not apply

to an attorney who is not representing a client in a court or similar proceeding.[27]

---

[23]     *Id.*

[24]     *Iowa Supreme Court Attorney Disciplinary Bd. v. Rhinehart*, 827 N.W.2d
169, 172, 176-77 (Iowa 2013).

[25]     *Id.* at 176 ("We have noted lawyers 'are required to obey the disciplinary
rules when acting pro se or in a personal capacity.' Nevertheless, some rules target only
the conduct of an attorney while serving as an advocate representing a client. For
example, the comments to [Rule 3.3] indicate the rule applies only to an attorney
representing clients in the proceedings of a tribunal . . . ." (quoting *Iowa Supreme Court
Attorney Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 13 (Iowa 2012))). We note that
*Rhinehart* involved an attorney representing himself pro se. *Rhinehart*, 827 N.W.2d at
171. While we find the Iowa Supreme Court's analysis supportive of the proposition that
Rule 3.3 does not apply to an attorney acting in a non-representational capacity, i.e., as
a witness, we do not express an opinion on whether an attorney acting pro se is acting
in a representational or personal capacity for purposes of determining Rule 3.3's
applicability.

[26]     *Id.*

[27]     *Id.* at 177.

Reviewing the same commentary, the Supreme Courts of Colorado, Minnesota, and the Northern Mariana Islands have reached similar conclusions in cases involving Rule 3.3.[28]

In the language of the Preamble, the commentary to Rule 3.3 "explains" the "meaning" of the rule: the rule is limited to dishonest misconduct by a lawyer acting in a representational capacity before a tribunal. This meaning is supported by the inclusion of Rules 3.3 and 3.4 in the section titled "Advocate."[29] The commentary to Rule 4.1 also suggests that a lawyer engaging in dishonest misconduct in a personal capacity may be disciplined under Rule 8.4.[30] Limiting Rules 3.3 and 3.4 to representational conduct thus

---

[28]  *People v. Head*, 332 P.3d 117, 128-29 (Colo. 2013) (noting that the commentary to Rule 3.3, while not binding, was persuasive); *In re Disciplinary Action Against Albrecht*, 845 N.W.2d 184, 191 (Minn. 2014) (per curiam) (concluding that Rule 3.3 only applies to a lawyer representing a client); *In re Disciplinary Proceeding of Yana*, No. 2012-SCC-0017-ADA, 2014 WL 309314, at \*3, \*12 (N. Mar. I. Jan. 28, 2014) (per curiam) (quoting MODEL RULES OF PROF'L CONDUCT R. 3.3 cmt. 1 (2011) (concluding that the scope of Rule 3.3 is limited to "the conduct of a lawyer who is representing a client in the proceedings of a tribunal," including a lawyer acting pro se); *see also State ex rel. Okla. Bar Ass'n v. Dobbs*, 94 P.3d 31, 52 (Okla. 2004) (holding that Rule 3.3 "addresses professional misconduct *as an advocate* for making false statements to a tribunal, not false statements by a lawyer as a witness" (emphasis in original)).

[29]  Although the heading of this section is not determinative, it may be considered to resolve doubt as to the drafter's intent. *See Tweedy v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals*, 332 P.3d 12, 18 (Alaska 2014) ("[T]he title of a statutory provision or code . . . can be an interpretive tool . . . where the legislative meaning is in doubt"); *see also* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:14 (7th ed. 2007) (stating that section headings may "help illuminate legislative intent"). We apply this principle of statutory interpretation when interpreting legislative intent, and it is equally applicable when interpreting model rules and commentary. *See Rhinehart*, 827 N.W.2d at 176-77 (applying this interpretive tool to the headings of professional rules of conduct).

[30]  Alaska R. Prof. Conduct 4.1 cmt 1.

prevents overlap with Rule 8.4 without rewarding attorneys who commit dishonesty as parties or witnesses.[31]

We conclude that Rules 3.3 and 3.4 do not apply to Ivy's misconduct because these rules are intended to govern attorneys when they are acting as advocates and not in their personal capacities. We remand the question of sanctions in light of this holding.

### C. The Disciplinary Hearing Complied With Due Process.

Ivy also claims her state and federal constitutional due process rights were violated in the disciplinary proceeding. She appears to argue the disciplinary process is inherently biased because a finding of misconduct allows the Board to order the payment of attorney's fees, resulting in a financial benefit for the Bar Association.[32] But we cannot conclude that the specter of attorney's fees alone prevented members of either the Committee or the Board from serving as neutral and disinterested decision-makers.[33]

---

[31] *Cf. Adamson v. Municipality of Anchorage*, 333 P.3d 5, 16 (Alaska 2014) ("When we interpret a statute, we presume that no words or provisions are superfluous and that the legislature intended 'every word, sentence, or provision of a statute to have some purpose, force, and effect.' " (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011))).

[32] Ivy's reply brief also seems to suggest that the composition of the area hearing committee is inherently biased. Because she did not address this topic in her opening brief, we will not consider it. *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1128, 1134 n.19 (Alaska 2012) ("Attention to [an] issue [inadequately briefed in the opening brief] in a reply brief does not resuscitate it." (quoting *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991) (internal quotation marks omitted))).

[33] *See* Alaska Bar R. 12(g)(1), (5) ("A Hearing Committee member may not consider a matter when . . . (s)he is a party or is directly interested [or] (s)he believes that, for any reason, (s)he cannot give a fair and impartial decision."). We note that Ivy

(continued...)

Nor does Ivy allege she was denied any other procedural protections, and we agree with the Bar Association that "a full six days of formal hearing" provided ample due process.

## D. The Attorney's Fees Award Was Not Erroneous.

Ivy also appeals the award of attorney's fees to the Bar Association. She argues that in calculating the award, the Board failed to consider that she prevailed on one of the charges alleged in the Petition: that she falsely testified that Kyzer trespassed on her property. But Ivy gives this issue only cursory treatment, mentions it only in her statement of the case, and cites no legal authority requiring the Board to reduce its attorney's fee award in light of the Bar's failure to carry its burden of proof on only one of several serious counts.[34]

Bar Rule 16(c)(3) provides that when a finding of misconduct is made, the attorney may be ordered to pay the costs, "including attorney's fees, of the proceedings

---

[33] (...continued) could have challenged any of the hearing members for cause but did not. *See* Alaska Bar R. 12(h).

[34] Ivy also argues that if this court reverses the Board's conclusions concerning Professional Conduct Rules 3.3 and 3.4, we should similarly vacate the attorney's fee award. But Ivy argues the attorney's fees should be vacated only in her reply brief, and accordingly, this argument is waived for failure to raise in her opening brief. *See Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (citing "our well-established rule that issues not argued in opening appellate briefs are waived"); *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n.4 (Alaska 1982) ("Appellant set forth other grounds for reversal in her statement of points on appeal, one of which she argued in her reply brief, but argued none of them in her opening brief. Accordingly, these points are waived."). Even if this issue were properly raised, it is not apparent from this record how the Bar Association's fees and costs would have been different had it based its investigation and proceeding solely on Ivy's violation of Rule 8.4.

or investigation or any parts thereof,"[35] upon consideration of a number of factors. The Board considered the factors required by the rule.[36] And we have previously approved attorney's fees awards recommended by the Board.[37] Accordingly, we find no fault with the attorney's fees award. However, the Board may revise the award if it determines that reconsideration of the award is warranted in light of our ruling on Professional Conduct Rules 3.3 and 3.4.

## V.    CONCLUSION

We agree with the Board's findings and its conclusion that Ivy violated Professional Conduct Rule 8.4. But we disagree with the Board's conclusion that Ivy violated Professional Conduct Rules 3.3 and 3.4. We therefore REMAND this matter to the Board to reconsider the question of sanctions.

---

[35]    Alaska Bar R. 16(c)(3).

[36]    *See* Alaska Bar R. 16(c)(3)(A)-(J).

[37]    *See, e.g.*, *In re Disciplinary Matter of Friedman*, 23 P.3d 620, 624-25, 635 n.74 (Alaska 2001) (assessing $3,213 in costs and attorney's fees incurred by bar counsel in the proceedings against Friedman for mishandling client funds).