FABE, Chief Justice,
dissenting.
I respectfully disagree with the court's decision to disbar Deborah Ivy. I agree that Ivy violated Alaska Rules of Professional Conduct 8.4(a), (b), and (c) by Iying about the stalking incident in the parking lot and the alleged sexual assault by her brother in the courtroom. And she violated Alaska Bar Rule 15 by continuing to maintain her fabricated version of these events before the Board. But it is my view that disbarment of Ivy for being untruthful in the course of her own highly emotional personal family litigation is unnecessarily severe. \
All of the various aggravators applied by the court essentially boil down to this: Ivy was untruthful during her combative personal family dispute and consistently maintained her false account during the Bar proceedings. Thus the very falsehoods that were necessary elements of the two core violations of the rules have impermissibly provided the basis for the aggravating factors.
Moreover, the court has ignored the significant mitigating factor of Ivy's personal and emotional problems, resulting from years of a contentious personal relationship with her brother. And Ivy's falsehoods did not arise in the context of her representation of a client. Finally, there is no example in all of our prior disciplinary decisions that would support disbarment in Ivy's case. Though Ivy's conduct is unworthy of our profession and merits the severe sanction of a five-year suspension, it does not warrant disbarment.
As a separate matter, Ivy's attorney's fee obligation should be reduced in light of the fact that she prevailed on the issue of the application 'of Rules of Professional Conduct 3.3 and 3.4.
I. IVY'S CONDUCT WARRANTS A SUSPENSION OF FIVE YEARS INSTEAD OF DISBARMENT.
A. The Aggravating Factors Applied Against Ivy Were Necessary Elements Of Her Violation.
The court concludes that "five aggravating factors-Ivy's pattern of misconduct, its illegal nature, her dishonest motive, deceptive practices during the disciplinary process, and refusal to acknowledge the wrongfuiness of her actions-outweigh the single mitigating factor, Ivy's lack of disciplinary record." [1] But all of these aggravating factors are based on the same conduct for which Ivy is being disciplined and thus are not properly applied as aggravators. The sole basis for the conclusion that Ivy violated Alaska Rules of Professional Conduct 8.4(a), (b), and (c) and Alaska Bar Rule 15(a)(8) is the finding that Ivy Hed about the alleged instances of stalking and assault both in her court case and before the Bar once the grievance was filed.[2] And the aggravating factors rely on *390 precisely the same conduct as that for which Ivy is being disciplined: (1) a "pattern of misconduct" (by lying under oath on more than one occasion in the: course of her personal litigation with her brother); (2) the "illegal nature" of her conduct (by lying under oath in the course of her personal litigation with her brother); (8) a "dishonest motive" (by lying under oath in the course of her personal litigation with her brother in which monetary relief was at stake); (4) "deceptive practices during the disciplinary process" (by maintaining the truth of her false statements made in the course of her personal litigation with her brother during the disciplinary process); and (5) a "refgsal to acknowledge the wrongfulness of her actions" (by maintaining the truth of her false statements- made in the course of her personal litigation with her brother during the disciplinary process).[3] These aggravating factors do little more than restate the underlying violation: that Ivy lied about the stalking incident in the parking lot and the alleged sexual assault both in the courtroom and during the disciplinary process. :
Both of Ivy's falsehoods are therefore necessary elements of Ivy's two disciplinary violations and the basis of all of the aggravating factors applied by the court. In the-eriminal law context, the legislature has directed that "lf a factor in aggravation is a necessary element of the present offense ..: that factor may not be used to impose a sentence above the high end of the presumptive range." [4] Thus, conduct that constitutes an element of the offense itself cannot be applied against the offender as an aggravating factor. The same rationale should apply in the attorney discipline context, When an attorney misappropriates funds, we do not apply "misappropriation of funds" as an aggravating factor in the violation. Relying on dishonesty as an aggravating factor when the underlying offense is dishonesty is also impermissible.
Other jurisdictions have explicitly applied this reasoning to attorney discipline cases. For example, in People v. Kolhouse, a case from Colorado, the court refused to count a respondent's failure to comply with requests for information and refusal to acknowledge the wrongful nature of her conduct as aggravating factors because those factors were, "based on the same conduct underlylng one of Respondent’s rule violations" and there were "no additional allegations or evidence" that supported application of those factors.[5] And in In re Whitt, the Supreme Court of Washington held that because submission of false evidence was part of the factual basis for one of the respondent's violations, it could not also be applied against the respondent as a "separate aggravating factor." [6]
Here, destite "[aleknowledging the risk of double counting," [7] the court has improperly *391 applied the same facts that formed the basis of the disciplinary violations as separate aggravating factors. -
B. The Court And The Board Have Ignored A Significant Mitigating Factor: Ivy's Personal And Emotional Problems.
The court is incorrect in concluding that "as the Board found, the record also lacks evidence of [Ivy's] personal or emotional problems." [8] In fact, the Board recognized that "it appéared ... that Ms. Ivy exhibited some- evidence of personal and/or emotional problems regarding her relationship with her brother." But the Board nevertheless determined that it was "not qualified to assess how these problems may (or may not) have contributed to Ms. Ivy's wrongful actions" and thus discounted her personal and emotional problems as mitigating factors. Yet the American Bar Standards for Imposing Lawyer Sanctions expressly recognize "personal or emotional problems" as a mitigating factor.[9] The Board apparently conflated this factor with the separate mitigating factor of "mental disability" [10] 'because it seemed to fault Ivy for failing to offer "evidence from any mental health professional" and observed that Ivy had denied a history of "delusional thinking or hallucinatory episodes." _
Here, Ivy was in the midst of contentious family litigation when she lied about her brother's actions, and by her account, the antagonistic relationship with her brother had persisted "for decades." [11] At the formal disciplinary hearing, Ivy testified to the "verbal [and] emotional abuse" that Kyzer allegedly committed against her in the past, asserting that she was "very frightened of ever being alone with him." And as we noted the first time this matter was before us, the siblings' relationship had become "so acrimonious"[12] that the superior court issued a mutual no-contact order between Kyzer and Ivy in 2007, and a provision in their 2008 settlement agreement prohibited contact between the siblings While involvement in any litigation process "can produce anger, anxiety, stress, hurt, hard feelings, or other strongly negative emotional reactions that diminish [a] client's psychological wellbe-ing," [13] family disputes "often involve participants under especially intense emotional stress which can cloud their judgment," [14] And here, the acrimony in the litigation exceeded even the typical stress attendant to a family dispute, The close connection between Ivy's improper conduct and her contentious relationship with her brother places her behavior in context-a context that sheds meaningful light on Ivy's conduct without justifying or excusing it.[15] The court's failure to consider that stress as a mmgatmg factor takes Ivy’s conduct out of context and ignores the personal and emotional problems that she was experiencing.
C. 'Our Prior Decisions Do Not Support Disbarment In This Case.
Finally, the sanction of disbarment in this case is wholly inconsistent with our prior disciplinary decisions. In the past, we have taken into account the fact that attorney misconduct has occurred in a personal, non- *392 representative capacity.[16] Yet the court has failed to give weight to this factor in Ivy's case.[17] The ABA Standards reflect the greater severity of misconduct committed within the practice of law, noting that "the most important ethical duties are those obligations which a lawyer owes to clients.[18] Our own decisions and those of other states reflect this distinction.[19] The fact that Ivy's misconduct took place within the cireum-stances of her personal litigation, and was wholly unrelated to representation of a client, supplies important context, At the very least, that context may mitigate the risk of Ivy harming clients.[20]
While I agree that attorneys can be subject to disbarment for violations committed outside of a representative capacity, we have approved such a severe sanction in only one case, where an attorney was convicted as an accessory after the fact to a first-degree murder.[21] "In other cases in which attorneys have committed offenses in their personal capacities, we have adopted far less stringent sanctions. For example, in In re Schuler, we accepted a two-year suspension for a district attorney convicted of misdemeanor theft for the second time despite the ABA-recommended disbarment.[22]
And another disciplinary case, In re Purdy, is particularly instructive because the respondent's dishonest conduct and perjured testimony occurred outside of a representative capacity.[23] Frances Purdy forged vehicle title documents, misused her notary seal, and committed an act of perjury in an Anchorage Parking Authority proceeding in an attempt to evade paying a parking ticket for expired tags.[24] Purdy was convicted of and sentenced for misdemeanor forgery based upon this misconduct.[25] Bar Counsel and Purdy entered into a Stipulation for Discipline by Consent, which called for a five-year suspension,[26] and we approved that stipulation,[27] which contained a detailed analysis of Purdy's conduct and the applicable aggravating and mitigating factors under the ABA standards.[28] The stipulation recognized that *393 disbarment is generally appropriate where a lawyer engages in serious criminal conduct, involving falsely swearing, misrepresentation, or fraud, or where a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation. And among the aggravating and mitigating factors applied in Purdy's case were Purdy's prior disciplinary offense, her dishonest or selfish motive, her criminal conviction, her expression of remorse, and her cooperative attitude toward disciplinary authorities. But the Bar and Purdy stipulated that "[alddi-tional factors that may be considered in mitigation include the following: Ms. Purdy's conduct did not cause monetary loss to any person; the conduct did not affect any client; and the conduct did not occur within the practice of law." [29]
Similarly, in In re Stump, we approved a five-year suspension for an attorney who falsified evidence for use on his own behalf in civil litigation in which he was a defendant and subsequently affirmed the authenticity of that evidence under oath.[30] Purdy and Stump both testified falsely under oath in their non-representative capacities. - Here, Ivy also lied in her personal litigation; yet, rather than a five-year suspension, the court has ordered her disbarment. Such a disparity is unsupported and unjust.
Further, even when attorneys have committed violations in representative capacities involving dishonest misappropriation of client funds that directly harmed a client, the resulting sanctions have been much less severe than Ivy's. In In re Stepovich, In re Friedman, and In re Mann, all cases involving attorneys who misappropriated client funds, we reduced sanctions from the ABA-recommended disbarment to suspensions of two or three years,[31] despite the fact that we have recognized that "[tlhere are few more egregious acts of professional misconduct ... than the misappropriation of [al client's funds held in trust."[32] And in In re Rice, we approved a suspension of four years for an attorney who misappropriated client funds and "cause[d] [his clients] potential harm, which is sufficient under the ABA Standards to justify even the harshest sanctions, ... and ... arguably cause[d] actual harm to public trust in the legal system." [33] We justified the harsher four years-as opposed to the three-year suspensions given in Friedman and Mannmn-in part because the Bar found that Rice exhibited a "lack of remorse" [34] and had not turned himself in.[35] In all of these cases, the attorneys committed one of the most serious forms of professional misconduct, yet they received suspensions ranging from two to four years. Although Ivy's misconduct was limited to the context of her contentious and painful personal litigation, she is to be disbarred from the practice of law,
Moreover, a review of cases in which we have approved disbarment of attorneys reveals the extent to which Ivy's disbarment represents a departure from precedent. In In re Buckalew, we recommended disbarment as an appropriate sanction for an attorney who fabricated a false settlement document, forging the signatures of another attorney and a superior court judge, and embezzled $67,000 from two client trust accounts.[36] In In re Miles, we found disbarment warranted when the attorney misappropriated more than $20,000 of a deceased client's funds and then deceptively concealed *394 that conduct.[37] And in In re Wiederholt, we disbarred an attorney after eight separate parties filed grievances against-the attorney for conduct including putting an unauthorized signature on a check, making improper sexual advances to a client, kicking opposing counsel, improperly delaying discovery, threatening to -disclose client confidences, contacting an opposing party after being notified that the party was represented by an attorney, and filing an improper claim on behalf of a client to funds deposited in court.[38] Ivy’s conduct simply does not rise to the egregious level of the actions that-resulted in disbarment of these attorneys.
We-have -recognized that the ABA Standards promote uniformity and prevent “[fin-consistency of sanctions.”[39] This “goal was one of the major driving forces behind promulgation of the ABA Standards.”[40] The introduction to the Standards notes that “[finconsistent sanctions, either- within a jurisdiction or among jurisdictions, cast doubt on the -efficiency and the basic fairness of all disciplinary systems.”[41] Here, the court’s order disbarring Ivy is entirely inconsistent with our previous discipline decisions and thereby undermines the , fundamental purpose of our reliance on the ABA Standards.
II. -ATTORNEY’S FEES
Finally, I disagree with the court’s decision to affirm the attorney’s fee award. of $61,282.76 against Ivy. An evaluation of the ten enumerated factors to be considered under Alaska Bar Rule 16 when determining an appropriate award of attorney’s fees does not support the award.[42] Although the Board found that Ivys attorney tested the limits of zealous advocacy” and made the disciplinary proceedings unnecessarily complex, apparently applying the factor relating to “the reasonableness of the defenses raised by the Respondent,”[43] at least one of Ivy’s defenses was well-taken. We ruled in Ivy’s favor in concluding that the Alaska Rules of Professional Responsibility 3.8 and 3;4 were inapplicable to her case. This seems to suggest that her attorney’s advocacy was appropriately zealous on that issue. And the attorney’s fees were never reduced to reflect that Ivy was successful in her argument that Rules 3.3 and 3.4 did not apply.[44] For that reason alone, the fees must be reduced. It is unclear why Ivy should be required to pay attorney’s fees for time spent litigating the question of the applicability of Rules 3.3 and 3.4 when she was successful in that effort. Her ¡obligation should be reduced accordingly.
III. CONCLUSION
I respectfully dissent from the court’s decision to 'disbar Ivy. I believe a five-year suspension from the practice of law is the correct sanction for Ivy’s conduct and is most consistent with our prior discipline decisions. And regardless of the sanction, Ivy’s obligation to pay attorney’s fees should be reduced.
(A) the complexity of the disciplinary matter;
(B) the duration of the case;
(C) the reasonableness of the number of hours expended by Bar Counsel and the reasonableness of the costs incurred;
(D) the reásonableness of the number of Bar Counsel used;
(E) Bar Counsel’s efforts to minimize fees;
(F) the reasonableness of the defenses raised by the Respondent;
(G) vexatious or bad faith conduct by the Respondent;
(H) the relationship between the amount of work performed by Bar Counsel and the significance'of the matters at stake; ,
(I) the financial ability of the Respondent to pay attorney’s fees; and
(J) the existence of other equitable factors deemed relevant.

. . Op. at 385.

. Rule 8.4(a) states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct." Here, she allegedly violated the rules only by lying under oath about the alleged incidents with her brother. Rule 8.4(b) designates it misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Again, the criminal act reflecting adversely on Ivy's honesty and trustworthiness was her perjury regarding those same incidents. Rule 8.4(c) similarly prohibits attorneys from "engagling] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Yet again, Ivy's alleged lies are the only conduct involving dishonesty. Finally, Bar Rule 15(a)(3) prohibits "knowing misrepresentation of any facts or circumstances surrounding a grievance," Ivy committed this violation by continuing to lie. But for her lying about the incidents with her brother, Ivy could not have been found to have *390 violated any of these Rules; her lying is therefore a necessary element of each offense.

. Op. at 385.

. AS 12.55.155(e).

. 309 P.3d 963, 966 (Colo.O.P.D.J.2013).

. 149 Wash.2d 707, 72 P.3d 173, 180 (2003). The appellate level of the State Bar Court of California has also consistently adhered to the "long established principle that it is inappropriate to use the same conduct relied on to establish .a disciplinary Vlolatlon to establish an aggrava- © ting circumstance." In re Silverton, Nos. 95-O-10829, 99-O-13251, 2004 WL 60709, at *16 (Review Dep't of the State Bar Ct. of Cal., Jan. 6, 2004); see also In re Sampson, No. 90-O-17703, 1994 WL 454888, at *12 (Review Dep't of the State Bar Ct. of Cal., Aug. 16, 1994) ("It appears that :the hearing judge used the same conduct constituting the ... violation as a finding in aggravation of the same charge. This is inappropriate."); In re Burckhardt, No. 88-0-15079, 1991 WL 16498, at *6 (Review Dep't of the State Bar Ct. of Cal., Feb. 4, 1991) (holding that because a finding of aggravation for conduct involving bad faith, dishonesty, and concealment "reflect[ed] the same conduct ... that is properly 'the basis for the finding of [the] violation," the "finding in aggravation [was] duplicative"); In re Trillo, No. 85-0-13726, 1990 WL 92610, at *9 (Review Dep't of the State Bar Ct. of Cal., May 3, 1990) (declining to adopt a finding that a respondent made misrepresentations to his clients because the court had "already adopted such a finding of culpability and [did] not believe it 'appropriate to assign aggravation to the identical conduct"); In re Mapps, Nos. 87-0-12533, 87-0-11669, 1990 WL 92624, at *7 (Review Dep't of the State Bar Ct. of Cal., Mar. 27, 1990) (noting that because the court had already concluded that a respondent had embezzled clients' funds, constituting moral turpitude, the same conduct could not be "count[ed] ... again as a separate aggravating factor"). .

. Op. at 385.

. - Op. at 384.

. Stanparps - ror - Imposing - Lawyer - Sanctions § 1IILC.9.32(c) (Am. Bar Ass'n 1992) [hereinafter ABA Stamparps].

. Id. § 111.0.9.32().

. In re Ivy, 350 P.3d 758, 759 (Alaska 2015).

. Id. at 759.

. Bruce Winick, Symposium, Therapeutic Jurisprudence and the Role of Counsel in Litigation, 37 Cat, W.L. Rev, 105, 108 (2000).

. Andrew Schepard, Am Introduction to. the Model Standards of Practice for Family and Divorce Mediation, 35 Fam. LQ. 1, 2 (2001).

. "Although personal or emotional problems . are mitigating factors that may reduce a disciplinary sanction against an attorney, they do - not justify or excuse the attorney's misconduct, Nor do they shield the attorney from professional responsibility. Rather, they are offered and considered merely as explanations of the lawyer's conduct in order to temper the imposed sanction." In re Rau, 533 N.W.2d 691, 694 (N.D.1995) (internal citations omitted).

. In re Schuler, 818 P.2d 138, 142, 144 (Alaska 1991) (observing that "[i]t is also worthy of note that Schuler's conduct did not take place in connection with ... services performed in the practice of law" and contrasting this case with another in which "[the misconduct occurred in connection with services performed by [the attorney] in the practice of law"); cf. In re Miles, 339 P.3d 1009, 1020 (Alaska 2014) (noting that duplicitous acts by an attorney were "particularly" damaging when committed "while acting in her capacity as an attorney").

. Op. at 386-87.

. - ABA Sranparps, supra note 9, at § IL.

. We have observed that "(there are few more egregious acts of professional misconduct ... than the misappropriation of [a] client's funds held in trust." In re Buckalew, 731 P.2d 48, 55 (Alaska 1986) (quoting In re Beckmann, 79 N.J. 402, 400 A.2d 792, 793 (1979); see also In re Richmond, 996 So.2d 282, 289 (La.2008) (recognizing that because an attorney "was acting in his personal capacity ... [and there was therefore} no potential for client harm from [his] misconduct, his actions may be viewed as less egregious than the actions at issue" in cases involving attorneys acting in representative capacities).

. Moreover, we have held that the non-representative context of Ivy's conduct rendered Rules of Professional Conduct 3.3 and 3.4 inapplicable and therefore rejected the Board's recommendation of disbarment to the extent that it was based on those rules. In re Ivy, 350 P.3d 758, 762-65 (Alaska 2015). Yet, on remand the Board refused Ivy's request to present additional argument on the proper disciplinary sanction. Instead, it summarily recommended the same 'sanction of disbarmént, despite correspondence from Ivy's attorney indicating that she "wanted to be heard."

. In re Webb, 602 P.2d 408 (Alaska 1979), abrogated by In re Buckalew, 731 P.2d at 48 (adopting the ABA's sanctions standards). Ivy's conduct does not approach the conduct for which the attorney in In re Webb was disbarred.

. 818 P.2d 138 (Alaska 1991).

. No. S-08156 (Alaska Supreme Court Order, Nov. 18, 1998).

. In re Purdy, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 2-5).

. Id. at 4.

. Id. at 11.

. In re Purdy, No. S-089996 (Alaska Supreme Court Order, Mar. 26, 1999).

. In re Purdy, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 10).

, Id. (emphasis added).

. 621 P.2d 263 (Alaska 1980), abrogated by In re Buckalew, 731 P.2d 48 (Alaska 1986). While In re Stump and other earlier cases were abandoned by our decision in Buckalew to adopt the ABA Standards, our decision in Stump nevertheless relied on the Standards and should be considered instructive here. Id. at 265 n. 6 & n. 10 {referencing the 1979 draft ABA Standards for Lawyer Discipline and Disability Proceedings).

. In re Stepovich, 143 P.3d 963 (Alaska 2006); In re Friedman, 23 P.3d 620 (Alaska 2001); In re Mann, 853 P.2d 1115 (Alaska 1993).

. In re Buckalew, 731 P.2d at 55 (quoting In re Beckmann, 79 N.J. 402, 400 A.2d 792, 793 (1979)).

. 260 P.3d 1020, 1035 (Alaska 2011).

. Id. at 1033.

. Id. at 1035.

. 731 P.2d at 48.

. 339 P.3d 1009 (Alaska 2014).

. 877 P,2d 765, 766 (Alaska 1994).

. In re Buckalew, 731 P.2d at 52 n. 13.

. Id.

. ABA Standards, supra note 9, at § I.A.

. Rule 16(c)(3) lists the following factors to be considered:

. Rule J 6(c)(3)(F),

. In re Ivy, 350 P.3d 758, 762-65 (Alaska 2015).