OPINION
BOLGER, Justice.
I. INTRODUCTION
After remand the Alaska Bar Association Disciplinary Board again recommends disbarring an attorney who testified falsely in private civil litigation and in these disciplinary proceedings. Previously we directed the Board to reconsider sanctions in light of our holding that the attorney violated Alaska Rule of Professional Conduct 8.4 and Alaska Bar Rule 15, but not Rules of Professional Conduct 3:3 and 3.4, because the misconduct did not arise in a representative capacity After independently reviewing the record, we now conclude that the severity of this misconduct warrants disbarment.
II. FACTS AND PROCEEDINGS
We set out the facts and proceedings relevant to this bar matter in In re Ivy.[1] Here *377 we recapitulate those facts most relevant to the imposition of sanctions.
Deborah Ivy and her brother, David Kyzer, were involved for several years in now-settled litigation over the dissolution and unwinding of business organizations and joint property holdings of Ivy, Kyzer, their two sisters, and others. During that litigation, relations between Kyzer and Ivy grew so acrimonious that a no-contact order was issued in December 2007. This order prohibit, ed in-person or telephone contact between Ivy and Kyzer without an attorney present and prohibited each party from coming within 500 feet of the other's residence. Ivy subsequently testified that Kyzer made improper contact with her on three occasions after this order issued. In response Kyzer filed an ethics grievance with the Alaska Bar Association, claiming that Ivy fabricated these incidents, in violation of the Alaska Rules of Professional Conduct.
Two of the alleged incidents bear on the sanctions inquiry. First, on January 7, 2008, Ivy provided a 80-minute statement to a police officer, claiming that Kyzer had stalked her at a women's clothing store about ten days earlier. Based on Ivy's statement and because Ivy claimed to be in hiding and did not want to come to the courthouse, the officer offered to request a telephonic hearing for a domestic violence restraining order. The day Ivy made the police report was the same day she was scheduled to give a deposition in the litigation with Kyzer, A few days before, on January 8, the superior court had denied Ivy's motion to stay the deposition, and on January 4 we denied Ivy's emergency motion to stay the superior court order denying her request. Ivy did not appear at the January 7 deposition despite having been ordered to do so. In response to a follow-up order to appear for the deposition, Ivy's attorney reported the alleged stalking incident to the superior court. Ivy ultimately was deposed on March 18. At that deposition, Ivy testified about the alleged stalking incident. She described in great detail her movements among the various racks of clothing and the dressing rooms, Kyzer's allegedly menacing use of his vehicle, and her response. The second incident occurred in July 2010 when Ivy claimed that Kyzer assaulted her in a courtroom and that his actions constituted criminal sexual assault. 'To support this claim, Ivy filed a Notice of Sexual Assault with the court accompanied by an affidavit describing the alleged incident. -
In December 2010 Kyzer filed an ethics grievance with the Alaska Bar Association, alleging that Ivy violated several Alaska Rules of Professional Conduct by falsely testifying that Kyzer stalked her and assaulted her in the courtroom. After an investigation by a special bar counsel and a hearing, the Area Hearing Committee found that Ivy knowingly provided false testimony at the deposition, in her affidavit, and during_the disciplinary proceedings.
Specifically the Committee found that Ivy’s testimony about the stalking incident was "not credible," that her description of how Kyzer moved his vehicle in the clothing store parking lot was "not physically possible," and that when confronted 'with this physical impossibility during cross-examination, Ivy "fabricated a new story," continued to testify falsely, and did not acknowledge that her account was flawed. The Committee also found that courtroom video accurately depicted the alleged assault and largely contradicted Ivy's claims. It further found it "not reasonably possible for someone to have experienced the inadvertent and minor bump of a brother attempting to be excused ... and then to honestly or mistakenly behave that they had been sexually assaulted." The Committee also noted that Ivy testified that she had not been mistaken and that she had not imagined or hallucinated the alleged courtroom assault.
Based on clear and convincing evidence, the Committee concluded that Ivy violated Rules of Professional Conduct 8.8(a)(1) and (8); 8.4(b); 8.4(a), (b), and (c); and Bar Rule 15(a)(8). Applying this court's three-step attorney sanctions inquiry,[2] the Committee recommended disbarment given the ethical violations, Ivy's intentional mental state, the serious actual or potential injury caused by her misconduct, the recommended sanction *378 under the American Bar Association Standards for Imposing Lawyer Sanctions[3] and the balance 'of aggravating and mitigating factors; 'The Committee also recommended awarding. $61,282.75 in attorney's fees and costs, about $26,000 less than bar counsel requested.: The Board adopted the Committee's findings and recommendations in full. Ivy appealed.
In that initial appeal we agreed with the Board's findings about both the alleged stalking incident and the alleged courtroom assault.[4] We also agreed that sufficient circumstantial evidence established that Ivy's testimony was objectively false and that Ivy knew her testimony was not true.[5] Accordingly we concluded that Ivy violated Rule of Professional Conduct 84 and Bar. Rule 15,[6] However because Ivy's misconduct arose in a purely personal capacity, we concluded that Ivy did not violate Rules of Professional Con duct 8.3 and 84.[7] Therefore we remanded the matter to the Board: to reconsider sanc tions.[8] Finally we no fault" with the attorney's fees and costs award.[9] We indicated only that the Board "may revise the award if it determines that reconsideration .is warranted." [10]
Upon reconsideration, the Board again recommends disbarment and the same fee and cost award. Ivy again appeals,
III, STANDARD OF REVIEW
We independently review the entire record in attorney disciplinary proceedings, but we give "great weight" to findings of fact made by the Board.[11] 'When an attorney appeals the Board's findings of fact, the attorney must demonstrate that such findings are erroneous.[12] When reviewing questions of law and questions concerning the appropriate ness of sanctions, we apply our independent judgment.[13]
IV. DISCUSSION
A, Ivy's Misconduct Warrants Disbarment,
'When sanctioning an attorney for misconduct, we seek to "ensure a level of consistency necessary for fairness to the pub-lie and the legal system." [14] "Our paramount concern ... must be the protection of the public, the courts, and the legal profession," [15]
The American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) and our prior eases guide us.[16] First we characterize the attorney's conduct in light of three variables: the ethical violation(s), the attorney's mental state at the time of the misconduct, and the actual or potential 'injury the attorney's misconduct caused.[17] This three-variable characterization yields a presumptive sanction under the ABA Standards, which we then adjust in light of aggravating and mitigating factors [18] and our prior cases.[19] Throughout this in *379 quiry we exercise our independent judgment,[20] and we recognize the fact-specific nature of each case.[21]
Ivy contends that her misconduct ' warrants a two-year suspension rather than the Board's recommended sanction of disbarment, Applying our independent Judgment we agree with the Board. ~
1. Step one: ethical violation(s), mental state, and injury
a. Ethical violation(s)
- Previously we concluded that Ivy violated Bar Rule 15 and Rule of Professional Conduct 84.[22] Nonetheless the parties dispute which subsections of these rules Ivy violated, specifically whether Ivy violated Rule 8 4b).[23] The nature of Ivy's violation, which determines the subsections of Rule 8.4 Ivy violated, bears on how we characterize Ivy's misconduct and accordmgly affects our analysis of sanctions.
We conclude, as the Board did, that Ivy violated Rule 8.4(b)-as well as (a) and (c)because her false testimony constitutes a criminal act that reflects poorly on her integrity as an attorney. Under Rule 8:4(b) it is professional misconduct for an attorney to "commit a eriminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." [24] Ivy argues that the Board has no authority to conclude that she violated Rule 8.4(b) because she was never convicted of perjury.
Neither the text of Rule 8.4(b) nor the commentary to it requires an underlying eriminal conviction. Rather, as In re Friedman demonstrates,[25] Rule 84(b) contemplates the criminal nature of an attorney's misconduct. - In In re Friedman we concluded that an attorney violated former Disciplinary Rule 1-102(A)(8); that rule deemed it professional misconduct to "[elugage in illegal, conduct involving, moral turpitude." [26] We explained that, though the attorney had not been convicted of a crime, the attorney's misconduct would have constituted eriminal misapplication of property under Alaska law if he had committed the underlying acts in Alaska rather than in California.[27] But because the misconduct occurred elsewhere, it was beyond the reach of our penal laws.[28] Like former Disciplinary Rule 1-102(A)@8), Rule 84(b) does not require an underlying criminal conviction. for a violation to occur,. Violating the rule requires only that an attorney engage in dishonest conduct that would be criminal under Alaska law.[29]
Under AS 11.56.200 a person commits criminal perjury, a class B felony,[30] when "the person makes a false sworn statement which the person does not believe to be *380 true." [31] The statement must be objectively false, and the person must know that the statement is false.[32] The statute encompasses all false sworn statements, not just those made in court.[33] Under the Rules of Professional Conduct, the word "knowingly" "denotes actual knowledge of the fact in question," [34]
We already concluded that Ivy acted knowingly when she testified falsely, that Ivy's testimony was objectively false, that circumstantial evidence supported the finding that Ivy knew her testimony was untrue, and that Ivy "did not eredibly explain that she mistakenly believed it was true." [35] Such conclusions satisfy the elements of eriminal perjury. Because perjury is a dishonest act, we conclude that Ivy violated Rule 8.4(b).
We further conclude that Ivy violated Rules of Professional Conduct 8.4(a) and (c) and Bar Rule 15(a2)@8). Our previous decision supports these conclusions: Ivy breached the Rules of Professional Conduct, which constitutes a violation of Rule of Professional Conduct 8.4(a); she engaged in dishonest conduct, which violates Rule of Professional Conduct 8.4(c); and she knowingly misrepresented facts and cireumstances in this grievance proceeding, which violates Bar Rule 15(a)(8).[36]
b. Mental state
The record supports the finding that Ivy acted intentionally when she testified falsely in the litigation with Kyzer and in these disciplinary proceedings. Neither the Rules of Professional Conduct nor the Bar Rules define "intentional" conduct, The ABA Standards, which we follow, define "intent" as "the conscious objective or purpose to accomplish a particular result." [37] Intent does not require malfeasance,[38] and cireum-stantial evidence can support a finding of intent.[39]
We previously concluded that Ivy acted, at minimum, knowingly when she testified falsely.[40] We cited Ivy's motive to lie, the "incredibility of [her] testimony," the strong evidence contradicting her accounts, her persistence in asserting her claims despite such evidence, and her failure to demonstrate that her ability to perceive was compromised.[41] These facts and others also support the finding that Ivy acted with intent: Ivy made a police report accusing Kyzer of stalking on the same day she was scheduled to give a *381 deposition in the litigation with him-and after her requests to stay that deposition already had been denied. She subsequently testified about the alleged stalking in great detail, And, in this appeal, she admits acting with a selfish motive when giving that testimony. She also continues to rationalize her previous stories rather than acknowledge their incredibility.
Such cireumstantial evidence supports the finding that Ivy sought to manipulate the litigation with Kyzer and these disciplinary proceedings. Therefore we agree with the Board that Ivy acted intentionally.
c. Injury and potential injury
We also conclude that Ivy's misconduct caused serious actual or potential injury to-Kyzer and to the legal system, but not to the public or to the legal profession. The ABA Standards define injury according to the type of duty violated and the extent of actual or potential harm.[42] Harm ranges from "serious" to "little or no" injury.[43] Potential injury is harm that is "reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." [44]
Ivy contends that she did not cause serious harm to Kyzer, citing a lack of "clear and convincing evidence" in the record. She further contends that whatever potential injury she caused to him was "limited."
As an initial matter, evidence of injury and potential injury need not reach the clear and convincing evidentiary threshold. The ABA Standards, which guide us in assessing sanctions,[45] "are designed for use in imposing a sanction or sanctions following a determination by clear and convincing evidence" of an ethical violation.[46] Accordingly we engage in a two-part inquiry, First we ask if clear and convincing evidence supports concluding that an attorney violated the ethical rules.[47] If we answer in the affirmative, we then consider what level of discipline to impose.[48] We have never before applied the clear and convincing evidentiary threshold to this latter inquiry.
The extreme nature of Ivy's accusations supports our conclusion that Ivy caused Kyzer serious actual or potential injury. Ivy accused Kyzer of criminal sexual assault, a class B felony,[49] and filed an affidavit with the court supporting the allegation. Ivy also enlisted the justice system by making a police report accusing Kyzer of stalking, a class A misdemeanor.[50] She subsequently testified about the alleged stalking incident in detail.
However - incredible, such - accusations threaten to impose a considerable toll on the accused. A class B felony conviction for criminal sexual assault in the second degree carries a presumptive sentence of 5 to 15 years with a maximum sentence of 99 years.[51] A class A misdemeanor conviction for eriminal stalking could result in 'a one-year prison sentence.[52] Threats of criminal sanctions stand to tarnish the reputation of the accused and to cause emotional distress for the accused and his or her loved ones. For protection a person might reasonably seek legal advice, as Kyzer apparently did here, ' Moreover Ivy's false accusation about the stalking delayed the litigation; her deposition scheduled for January was conducted *382 in March, This delay could have caused Kyzer to incur substantial, and unnecessary, legalicosts.
We also conclude that Ivy's mlsconduct caused serious injury or serious potential injury to the legal system. An attorney's duties to the legal system include abiding by the substantive and procedural rules that "shape the administration of justice," not using or creating false evidence, and generally refraining from illegal and other improper conduct.[53]
Ivy argues that neither the deposition nor the affidavit caused serious harm to the legal system because the litigation settled "[sloon after" she testified falsely at the deposition, But Ivy misconstrues the timeline of the litigation. After she testified falsely about the alleged stalking incident at the deposition, the litigation continued for at least.another two years; in mid-2010 she falsely alleged that Kyzer assaulted her in a courtroom. And as explained, Ivy's false testimony about the stalking incident delayed the lltlgatlon w1th Kyzer. This delay, at minimum, threatened to 1mpose a substanhal and unnecessary burden on the judicial system. We recognize that "lengthy and duplicative filings," similar to those here, can impose significant costs.[54] And failing to timely comply with discovery requests, as Ivy did, can' seriously interfere with proceedmgs [55] Further, as the Board concluded, Ivy's false testimony about Kyzer could have led the court to reach false conclusions about the credibility of witnesses. Such a msk also poses serious injury to the legal system.
However the record does not support concluding that Ivy caused serious sctual or potential injury to either the public or the legal profession. Duties that attorneys owe to the public emphasize the public's right "to trust lawyers to protect their property, liberty, and lives" and the expectation that lawyers act honestly and refrain from conduct that interferes with the administration of justice.[56] Duties to the legal profession similarly include mamtalmng the mtegmty of the profession.[57]
We recognize that actions falling below the ABA's standard of conduct diminish the public's confidence in attorneys.[58] Such conduct also threatens the integrity of the legal profession.[59] But here there was little risk of such harm. The record does not suggest that the public was aware of Ivy's misconduct, And Ivy claims that she has not practiced law in 15 years. If this is true, then she has no current clients who would become aware of this disciplinary action.[60] Therefore the record does not support serious actual or potential injury to the public or to the legal profession. i
2. Step two: presumptive sanction
If there are multiple instances of misconduct, "(tlhe ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct ... and generally should be greater than the sanction for the most serious misconduct." [61] The ABA Standards favor disbarment in this case. For example, Standard 5.11(b) recommends disbarment 'when an attorney intentionally engages in dishonest conduct that "geriously adversely reflects on the lawyer's fitness to practice [lawl," as Ivy did here. Similarly Standard 6.11 recommends disbarment when an attorney acts "with the intent to deceive the court, makes a false statement, [or] submits a false document ... [that] causes serious or potentially serious injury," *383 as Ivy also did. Therefore disbarment, the most severe sanction under the ABA Standards, is the baseline against which we weigh aggravating and mitigating factors[62] - starting point which the dissent does not appear to dispute.[63]
3. Step threé: aggravating and mitigating factors
The ABA Standards provide a nonexclusive list of aggravating and mitigating factors that, on, balance, may counsel in favor of modifying the presumptive sanction.[64] When the ABA Standards recommend disbarment, aggravating factors are relevant "only to the extent that they neutralize the mltlgatmg factors." [65]
The Bar Association and Ivy dispute Which aggravating and mitigating factors exist and how the factors affect the appropriate sanction. The Board cited several aggravating factors but only one mitigating factor and accordingly concluded that the aggravating factors outweighed the single mitigating factor.[66]
"We 1ndependently review the entire record in attorney disciplinary proceedmgs, though findings of fact made by the Board are entitled to great weight." [67] We agree with the Board's ultimate conclusion: The aggravating factors outweigh the single mitigating factor. However we disagree with some of the Board's analysis.
Like the Board, we conclude that the record supports several aggravating factors. As explained, the record establishes that. Ivy acted selfishly, Ivy admits that she acted selfishly in her briefing; her persistent pattern of behavior, the timing of her false accusations, and her failure to acknowledge past wrongs further support the conclusion.[68] These same facts and cireumstances also support several other aggravating factors; a pattern of misconduct, multiple offenses, repeatedly making false statements in the disciplinary proceedings,, refusing to acknowledge past wrongs, and illegal conduct.[69]
But the record does not support the Board's conclusion that psychological issues made Kyzer vulnerable. Rather the Committee noted that the Committee prevented Ivy from discovering her brother's "personal information." And we find no evidence that might otherwise support the finding. "[Tlhe Bar has the burden of. demonstrating its initial charges against a respondent attorney."[70] Ivy's experience practicing law also should not be considered an aggravating factor. The mere facts that Ivy was admitted to practice in 1984 and onee worked .at a law firm bear little weight, particularly when nothing in the record refutes Ivy's claim that she has not practiced in 15 years.
As for mitigating factors the Board found one, no prior disciplinary offenses, And it *384 explained why it gave little weight to Ivy's claims that she suffered personal or emotional problems: Ivy "unequivocally denied any past delusional thinking or hallucinatory episodes"; she "offered no evidence from any mental health professional"; and given her conduct in the proceedings, the validity of her claims about the "past altercations she had been subject to at the hands of her brother" could not be ascertained-"her testimony ... standing alone ... was not eredi-ble." Accordingly the Board determined it was "not qualified to assess how[the alleged] problems may (or may not) have contributed to Ms. Ivy's wrongful actions."
We agree with the Board's conclusions on mitigating factors. The record lacks evidence of a disciplinary history; this absence qualifies as a mitigating factor.[71] But, as the Board found, the record also lacks evidence of personal or emotional problems. Ivy affirmatively denied such problems, and she produced no evidence supporting how her alleged fear of her brother might support the finding. We give "great weight" to the Board's factual findings;[72] on appeal the respondent attorney "bears the burden of proof in demonstrating that such findings are erroneous.[73] The record supports the Board's findings, and Ivy does not demonstrate how the Board's findings are erroneous. Accordingly we conclude, like the Board, that this mitigating factor is entitled to little, if any, weight, Finally, Ivy's pattern of dishonesty also does not support her claim to good character, an available mitigating factor under the ABA Standards.[74]
We now weigh these aggravating and mitigating factors against the ABA-recommended sanction of disbarment. "[TJhere is no 'magic formula' " for balancing aggravating and mitigating factors.[75] Each case demands an independent inquiry [76] in light of the "nature and gravity of the lawyer's misconduct." [77] In balancing the factors, we are sensitive to the risk of double counting.[78] This double-counting risk can arise between the factors themselves; it also can arise when the ABA-recommended sanction or underlying ethical violation turns on the same facts as an aggravating or mitigating factor. We account for this double-counting risk by weighing the factors in light of the cireum-stances.
We conclude, similar to the dissent,[79] that several of the aggravating factors are repetitious under the cireumstances here. For example, Ivy's misconduct-repeatedly lying under oath-supports several aggravating factors: a pattern of misconduct, multiple offenses, a dishonest motive, deceptive practices during the disciplinary proceedings, a refusal to acknowledge misconduct, and ille *385 gal conduct.[80] To avoid doubly aggravating the sanction for precisely the same acts,[81] we consider the repetitious nature of these factors and weigh them accordingly. Here because Ivy's pattern of misconduct and multiple offenses (both aggravating factors) turn on precisely the same conduct, we give only Ivy's pattern of misconduct-but not multiple offenses-weight at the balancing stage. By contrast, we give some weight to factors that do not turn on exactly the same facts; here this includes Ivy's pattern of misconduct, her dishonest motive, the fllegal nature of her misconduct, deceptive practices in the disciplinary process, and her refusal to acknowledge the wrongfulness of her conduct.
We also account for repetition between the facts supporting an aggravating factor and the facts supporting an element of the presumptive sanction or the underlying ethical violation. But the mere existence of repetition does not mean we ignore the aggravating factor at the balancing stage. "[P Jresumptive terms are intended to be applicable in typical cases, and not in aggravated or mitigated cases."[82] When an attorney's misconduct exceeds the typical case, we give some weight to the aggravating factor.
Ivy's misconduct exceeds the typical case: She lied in a complex lawsuit involving multiple parties, she falsely reported that her brother had committed criminal acts against her, and she lied in these proceedings to evade discipline for that misconduct. Thus though repetition exists between the aggravating factors and the elements of the presumptive sanction (e.g., Ivy's selfish motive)[83] and between the aggravating factors and the elements of the underlying ethical violations (e.g., Ivy's dishonest conduct),[84] we give some weight to these aggravating factors at the balancing stage. But in doing so we account for the double-counting risk, which arises from the similarity of the factual cireumstances, by appropriately weighing the factors.
Acknowledging the risk of double counting, we conclude that the five aggravating factors-Ivy's pattern of misconduct, its illegal nature, her dishonest motive, deceptive practices during the disciplinary process, and refusal to acknowledge the wrongfuiness of her actions-outweigh the single mitigating factor, Ivy's lack of disciplinary record. Therefore we do not reduce the presumptive sanetion of disbarment.[85]
4. Our case law
Our prior cases also support disbarment.[86] Previously we have reduced an ABA-recommended sanction given the presence of several compelling mitigating factors, such as evident remorse, active efforts to remedy the problems caused, and voluntarily notifying authorities about the misconduct soon after it occurred.[87] Such compelling mitigating fac *386 tors are entirely absent here. Instead Ivy continues her fabrications, and she actively denies any misconduct. Further the only factor counseling against disbarment is Ivy's lack of disciplinary record. Even for a practicing attorney this factor is not particularly compelling, Yet here Ivy apparently has not practiced for 15 years; accordingly the fact that she has not faced any discipline during this period is unremarkable. And though we have explained that we "place a great deal of weight on the absence of dishonest and selfish motives," [88] such cireumstances are not present here. [89]
By contrast, when aggravating factors outweigh mitigating factors 'we impose the more severe sanction, including disbarment.[90] A "lack of cooperation" in the disciplinary proceedings-or deliberate interference, as © here-merits "additional disciplinary action." [91] We also have found disbarment warranted when the attorney's misconduct threatens significant injury and when it is part of a larger scheme to defraud, as we did in In re Buckalew.[92] Under such cireumstances, disbarment may be warranted even if compelling mitigating factors might otherwise favor a lesser sanction.[93] Ivy's misconduct threatened substantial injury, it was calculated to influence the litigation with Kyzer and these disciplinary proceedings, 'and the record lacks evidence of any compelling mitigating factors,.
To conclude that disbarment is too severe, the dissent analogizes to our brief order in In re Purdy approving a stipulated *387 five-year suspension.[94] But simply because we approved the stipulation does not mean we agree with all of its analysis, Contrary to the stipulation's conclusion, the non-representative context does not constitute a mitigating factor,. Like aggravating factors, we do not mitigate a presumptive sanction when the presumptive sanction and the mitigating factor turn on exactly the same facts.[95] Under the ABA Standards the presumptive sanction accounts for the non-representative context. - Similar to the Alaska Rules of Professional Conduct,[96] the Standards categorize recommended sanctions based on the context in which an attorney's misconduct arises. For example, ABA Standards 4.0 to 4.6 guide the presumptive sanction'"when an attorney's misconduct implicates duties owed to clients; the more severe the conduct with respect to a client, the more severe the sanction. By contrast, and as here,[97] ABA Standards 5.0 to 5.2 guide the presumptive sanction when the misconduct implicates duties owed to the public, and ABA Standards 6.0 to 6.3 guide the presumptive sanction when the 'misconduct violates duties owed to the legal system. Sanctions for such violations may include disbarment regardless of whether the misconduct relates to client riaatters.[98] The context in which an attorney's misconduct arises also might affect our evaluation of the severity of harm, as it did here;[99] this variable may affect the presumptive sanction.[100] Under . our framework, we account for the context before we arrive at the presumptlve sanc-131011 [101]
Further the severity, of Ivy's misconduct and the lack of compelling mitigating factors distinguishes In re Purdy,. Purdy lied in an administrative matter involving only herself in an effort to get a personal advantage visA-vis the government.[102] Ivy lied in a complex lawsuit involving multiple parties, including her brother; she lied to the police, in a deposition, and to the court in an affide-Vlt-all in an effort to get her brother in trouble and to obtain an unfair advantage over her brother in that litigation. Given the seriousness of and risk of harm from Ivy's lies about her brother, Purdy's- lies pale in comparison. The important distinction is that without discussing Purdy's stipulated facts and the three- step ABA analysis for Purdy's suspension, meludmg aggravating and mitigating factors, drawing useful. comparisons is difficult, Only if the analytlc framework—mcludmg the ABA starting *388 point and the aggravating and mitigating factors-is irrelevant does In re Purdy's outcome become relevant to the result here.[103]
We demand that attorneys act with integrity whether or not they are representing a client:
Onee admitted [to the bar], the requirement of good moral cHaracter does not cease to exist.... Society allows the legal profession the privilege of self-regulation. Thus, it is of the utmost importance that the public have confidence in the profession's ability to discipline itself . . . . [104]
Under the ABA Standards and our case law, Ivy's lack of integrity, self-interested motives, and evident disregard for how her misconduct gravely threatened others and the legal system warrants disbarment. | j
B. The Record Supports The Board's Attorney's Fees And Costs Award.
Ivy contends that, at minimum, the Board's attorney's fees and costs award should be "dramatically reduced." Previously we found "no fault with the attorney's fees award." [105] We determined that the Board complied with Alaska Bar Rule 16(c)@8), which authorizes disciplinary boards to award attorney's fees and costs upon consideration of ten statutorily enumerated factors.[106] And we explained that even if Ivy had properly raised the issue of attorney's fees and costs, it was "not apparent from thie] record how the Bar Association's fees and costs would have been different had it based its investigation and proceeding solely on Ivy's violation of Rule 8.4." [107] We accordingly acknowledged that the Board "may revise the award," but we did not require the Board to do so.[108]
As before Ivy does not demonstrate why the Board's award is flawed. Under Bar Rule 16(c)(@8), the amount of an award does not turn on who prevailed on a given issue. Instead the Rule requires the Board to consider, among, other factors, "the reasonableness of the number of hours expended by Bar Counsel and the reasonableness of the costs incurred" [109] as well as "the relationship between the amount of work performed by Bar Counsel and the significance of the matters at stake." [110] The Bar Association made sound arguments that related to an issue of first impression: Never before had we considered whether Rules of Professional Conduct 8.8 and 3.4 apply in the non-representative context, neither rule refers to a client relationship, and neither necessarily implies a representative context. Simply because Ivy prevailed in her argument that Rules 8.8 and 8.4 did not apply does not render the attorney's fee and cost award too high.
Moreover, under Bar Rule 16(c)@8), the Board also shall consider "the duration of the case," [111] "the reasonableness of the defenses raised by the Respondent,[112] and the respondent's "vexatious or bad faith conduct." [113] We give "great weight" to the Board's findings of fact; [114] such findings include facts related to the attorney's conduct in the disciplinary proceedings. Here the Board found that the disciplinary matter had lasted for more than two years and that Ivy had acted unreasonably, including by refusing "to admit the falsity of her affidavit and *389 deposition testimony" and by asserting a "defense of not 'knowingly' ... offer[ing] false testimony"-despite presenting no credible evidence in that regard. Such actions, as the Board found, undoubtedly increased Bar Counsel's expenses and made the proceedings unnecessarily complex. °
Therefore, as before, we'uphold the fee and cost award.
V. CONCLUSION
.Deborah Ivy is DISBARRED from the practice of law effective 80 days from today. Ivy must also comply with the Board's fee and cost award.
MAASSEN, Justice, not participating,.

. 350 P.3d 758 (Alaska 2015).

. See In re Shea, 273 P.3d 612, 622 (Alaska 2012).

. - Stanparps rog Imposing Lawyer Sanctions, Am. Bar Ass'n (1992) [hereinafter ABA Sramparos], httpy// www.americanbar.org/content/dam/aba/ administrative/professionaLresponsibility/ corrected..standards..sanctions_may20 12... wfootnotes.authcheckdam.pdf.

. In re Ivy, 350 P.3d at 761-62.

. Id. at 762.

. Id. at 759.

. Id. at 762-65.

. Id. at 766.

. 1d.

. Id.

. In re Miles, 339 P.3d 1009, 1018 (Alaska 2014) (quoting In re Shea, 273 P.3d 612 619 (Alaska 2012)).

. Id.

. 14.

. In re Buckalew, 731 P.2d 48, 52 (Alaska 1986).

. Id. at 56 (citing In re Preston, 616 P.2d 1, 6 (Alaska 1980); ABA Standards, supra note 3, at § III.A.1.1).

. In re Shea, 273 P.3d at 622.

. Id. (citing In re Cyrus, 241 P.3d 890, 893 (Alaska 2010)).

. Id. (citing In re Cyrus, 241 P.3d at 893).

. See In re Wiederholt, 877 P.2d 765, 769 (Alaska 1994) ("[SJanctions in other cases can be no more than indicators of appropriate sanctions in a given case because of inevitable factual differ *379 ences concerning not only the offense but the offender." (first citing In re Buckalew, 731 P.2d at 57 nn. 10-11; then citing In re Minor, 658 P.2d 781, 784 (Alaska 1983))).

. In re Shea, 273 P.3d at 623 (cmng In re Cyrus, 241 P.3d at 892-93).

. In re Wiederholt, 877 P.2d at 769 (first citing In re Buckalew, 731 P.2d at 57 nn. 10-11; then citing Minor, 658 P.2d at 784).

. - In re Ivy, 350 P.3d 758, 759 (Alaska 2015).

. - As relevant here, Rule of Professional Conduct 8.4 provides:
It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. Alaska R. Prof. Conduct 8.4(b).

. 23 P.3d 620 (Alaska 2001).

. Id. at 629 n. 32 (alteration in original) (quoting former Disciplinary Rule 1-102(A)).

. Id. at 629 n. 33.

. Id.

. See Alaska R. Prof. Conduct 8.4(b) ("It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely, on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. ..."); In re Friedman, 23 P.3d at 629 & nn. 32-33.

. AS 11.56.200(c).

. AS 11.56.200(a).

. LaParle v. State, 957 P.2d 330, 335 (Alaska App.1998); Alaska Criminal Pattern Jury Instruction 11.56.200 (2009). Pattern Jury Instruction 11.56.200 provides:
To prove that the defendant committed [the] crime [of perjury], the state must prove beyond a reasonable doubt each of the following elements:
(1) the defendant knowingly made a sworn statement;
(2) the statement was false; and
(3) the defendant did not believe the sworn statement to be true.

. AS 11.56.240(2) (defining "sworn statement"); Joseph v. State, 315 P.3d 678, 686 (Alaska App.2013). AS 11.56.240 broadly defines statements to include "representation(s] of fact[,] . opinion, belief, [and] other state[s] of mind" when the statement "clearly relates to state of rind apart from or in addition to any facts that are the subject of the representation." AS 11.56.240(1). Sworn statements include statements "knowingly given under oath ..., including a notarized statement" and statements "knowingly given under penalty of perjury under AS 09.63,.020." AS 11.56.240(2). AS 09.63.020 governs certified documents.

. Alaska R. Prof. Conduct 9.1(h); see also In re Ivy, 350 P.3d 758, 762. (Alaska 2015) (explaining that " 'knowingly' making false statement for purposes of Rules [of Professional Conduct] requires both that statement be false and that speaker know so").

. In re Ivy, 350 P.3d at 762.

. See id. at 761-62, 766.

. ABA Stanparps, supra note 3, at § III (definitions).

. In re West, 805 P.2d 351, 356 (Alaska 1991) (citing the ABA Standards).

. In re Ivy, 350 P.3d at 762 & n. 11 (citing Adams v. Adams, 131 P.3d 464, 466-67 (Alaska 2006)); In re Friedman, 23 P.3d 620, 626 (Alaska 2001) ("[It is permissible to infer that an accused intends the natural and probable consequences of his or her knowing actions." (quoting In re Triem, 929 P.2d 634, 648 (Alaska 1996))).

. In re Ivy, 350 P.3d at 762.

. Id.

. - ABA Stanparps, supra note 3, at §§ II, III.

. Id.

. Id. at § HIL

. In re Friedman, 23 P.3d 620, 625 (Alaska 2001).

. ABA Stamparps, supra note 3, at § IILA.1.3 (emphasis added).

. Alaska Bar R. 22(e) ("Bar Counsel will have the burden at any hearing of demonstratirig by clear and convincing evidence that the Respondent has ... committed misconduct as provided in [Bar] Rule 15.").

. See Alaska Bar R, 15 (defining grounds for attorney discipline); see also In re Buckalew, 731 P.2d 48, 52 (Alaska 1986) (adopting ABA framework for imposing attorney discipline sanctions).

. AS 11.41.420(b).

. AS 11.41.270(c).

. AS 12.55.125(i)(3).

. AS 12.55.135(a).

. ABA Stamparps, supra note 3, at § II (theoretical framework)

. In re Shea, 273 P.3d 612 622 (Alaska 2012).

. In re Rice, 260 P.3d 1020, 1032 (Alaska 2011).

. ABA Standarps, supra note 3, at § IL

. Id.

. | In re Hanlon, 110 P.3d 937, 947 (Alaska 2005) ("[Elven minor violations of law by a lawyer may tend to lessen public confidence in the legal profession." (quoting In re West, 805 P.2d 351, 355 (Alaska 1991))).

. Id.

. - The Bar Association did not refute Ivy's claim, and no evidence in the record suggests otherwise.

. ABA Stanparps, supra note 3, at § II (theoretical framework).

. The parties dispute whether ABA Standard 5.11(a) also favors disbarment. This dispute is not material to our analysis; the ABA Standards already point to the most severe sanction, See In re Schuler, 818 P.2d 138, 142 (Alaska 1991) (concluding that it made "no difference" whether misconduct violated ABA Standard 5.11(a) or 5.11(b) because both standards recommend disbarment); ABA Stanparps, supra note 3, at § II ('The ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct.").

. - See Dissent at 389-94.

. See ABA - Stampamos, § 1ILC.9.0. supra note 3, at

. In re Friedman, 23 P.3d 620, 632 (Alaska 2001).

. The Board found aggravating factors including a dishonest and selfish motive; a pattern of misconduct; multiple offenses; Ivy's repeated false statements in the disciplinary hearing; Ivy's failure to acknowledge any wrongful conduct; Ivy's expenence as an attorney (noting her admission in 1984 and her work at a law firm); a failure to make any restitution efforts until Kyzer's motion for them in the disciplinary proceedings; and Kyzer's potential vulnerability as a result of psychological issues. On appeal the . Bar Association claims many of the same factors except it does not claim Ivy's apparent failure to make restitution or Kyzer's vulnerability.

. In re Miles, 339 P.3d 1009, 1018 (Alaska 2014) (quoting In re Shea, 273 P.3d 612, 619 (Alaska 2012)).

. - See supra Part IV.A.1 b.

. See ABA - Stamparps, § 111.0.9.22. supra note 3, at

. In re Rice, 260 P.3d 1020, 1033 (Alaska 2011).

. See ABA - Standards, supra note 3, at § III.C.9.32(a).

. In re Miles, 339 P.3d at 1018 (quoting In re Rice, 260 P.3d at 1027); see also In re Triem, 929 P.2d 634, 640 (Alaska 1996) ("As a general rule ... we ordinarily will not disturb findings of fact made upon conflicting evidence." (quoting In re West, 805 P.2d 351, 353 n. 3 (Alaska 1991))); id. at 643 & n. 12 ("'The committee's finding of dishonesty by Triem during the disciplinary process is adequately supported by the record and we do not find it to be clearly erroneous.").

. In re Miles, 339 P.3d at 1018 (quoting In re Rice, 260 P.3d at 1027).

. See ABA Stamparps supra note 3, at § 1IILC.9.32(g). Ivy also claims several other mitigating factors such as an apparent delay in the filing of the grievance, the attorney's fees and cost award, the fact she likely will not commit similar misconduct again, and the non-representative context in which her misconduct arose. We find no support under our prior cases or in the record for Ivy's claims.

. In re Hanlon, 110 P.3d 937, 942 (Alaska 2005) (quoting In re Friedman, 23 P.3d 620, 633 (Alaska 2001)).

. Id. at 943.

. In re Buckalew, 731 P.2d 48, 54 (Alaska 1986).

. Cf. Juneby v. State (Juneby II), 665 P.2d 30, 36 (Alaska App.1983) ("[P]resumptive terms are intended to be applicable in typical cases, and not in aggravated or mitigated cases...."); Juneby v. State (Juneby I), 641 P.2d 823, 838-39 (Alaska App.1982), opinion modified and superseded on reh'g on other grounds, 665 P.2d 30 (Alaska App.1983) (explaining how to apply aggravating and mitigating factors when imposing criminal sanctions).

. See Dissent at 389-91.

. See ABA - Stawpamps, supra note 3, at § III.C.9.22.

. Cf. Juneby I, 641 P.2d at 842 ("precisely the same acts" should not be used to "doubly aggravate[ ]" offense).

. Juneby II, 665 P.2d at 36.

. For example, ABA Standards 5.11(b) and 6.11 apply only when an attorney acts intentionally. We concluded that Ivy acted intentionally in part because we found she acted selfishly; Ivy's selfish motive is also an aggravating factor. If Ivy's misconduct reflected the typical case, we would not give Ivy's selfish motive any weight at the balancing stage.

. For example, Alaska Rule of Professional Conduct 8.4(c) and Bar Rule 15(a)(3) are violated only when an attorney engages in dishonest conduct. Here such dishonest conduct also supports several aggravating factors, including a pattern of misconduct, multiple offenses, and obstruction of the disciplinary process. But because Ivy's misconduct exceeds the typical case, we give these factors some weight at the balancing stage.

. See In re Friedman, 23 P.3d 620, 632 (Alaska 2001) (when ABA Standards recommend disbarment, aggravating factors are relevant "only to the extent that they neutralize the mitigating factors."}.

. See In re Buckalew, 731 P.2d 48, 52 (Alaska 1986) (We consider our precedents to "ensure a level of consistency necessary for fairness to the public and the legal system.").

. See, e.g., In re Friedman, 23 P.3d at 632-34 (suspending attorney for three years, despite ABA-recommended disbarment, for mismanaging client funds and felony conduct given compelling mitigating factors including remorse, evidence that attorney had taken "significant measures" to remedy the problems caused, and good character); In re Mann, 853 P.2d 1115, *386 1117-20 (Alaska 1993) (suspending attorney for three years, despite ABA-recommended disbar'ment, for misappropriating cliént funds given compelling mitigating factofs including strong evidence of remorse, well-established personal and emotional problems, and voluntarily turning himself in to police within one month of misconduct when misconduct likely would have gone undiscovered).

. In re Rice, 260 P.3d 1020, 1033 (Alaska 2011).

. Given the absence of compelling mitigating factors, we find the dissent's reliance on cases like In re Schuler and In re Stump misplaced, Dissent at 392-93. In re Schuler reduced the presumptive sanction of disbarment for a conviction of misdemeanor theft because of the absence of any aggravating factors and the presence of several compelling mitigating factors, including the lack of a prior disciplinary record, personal and emotional problems for which the attorney was treated by a psychiatrist, criminal sanctions that imposed a 1.5-year probation and 100 hours of community service, the attorney's evident remorse, and fact the attorney's misconduct arose from a self-destructive motive-not from a desire for personal gain, as here. 818 P.2d 138, 139-45 (Alaska 1991).
Similarly in In re Stump the attorney admitted to the alleged acts of professional misconduct, and he presented evidence of several mitigating factors, , including emotional concerns arising from his wife's health and notification to counsel of his misconduct, 621 P.2d 263, 263-66 (Alaska 1980). Moreover, though In re Stump cited a preliminary draft of the ABA Standards, as the dissent. notes, dissent at 393 n. 30, the court's reliance on the draft standards was minimal. It . cited. the draft only to frame the respondent attorneys argument zd at 265 & n. 6, and to support the rather fundamental assertion that we consider the facts of each case, Id. at 265-66 & n. 10. We adopted the ABA Standards six years after In re Stump; that 1986 version recommended sanctions based on cases decided between 1980 and 1984, data which post-dates our decision in In re Stump. In re Buckalew, 731 P.2d 48, 51 & n. 10 (Alaska 1986).

. See, e.g. In re Miles, 339 P.3d 1009, 1018-20 (Alaska 2014) (disbarring attorney for defrauding client and' committing criminal theft, per ABA recommendation, when several aggravating factors neutralized the single mitigating factor, cooperation in disciplinary proceedings).

. In re Rice, 260 P.3d at 1036.

. 731 P.2d 48, 53-56 (Alaska 1987) (rejecting five-year suspension as insufficient for knowing conversion of client funds and forging of a judge's signature despite compelling mitigating factors, including mental and emotional problems, given significant risk 'of serious injury to client and legal system); see also In re Rice, 260 P.3d at 1036 (explaning In re Buckalew, 731 P.2d 48).

. See, e.g., In re Buckalew, 731 P.2d at 53-56 (identifying as mitigating factors mental and emotional problems, cooperation and disclosure after law partner discovered misconduct, and no record of prior misconduct). The dissent distinguishes In re Buckalew and other cases in which : we have imposed disbarment on the grounds that the attorneys' conduct in those cases -was far more culpable, Dissent at 393-94, While this may be true, extreme cases do not establish the minimum threshold for imposing a sanction, *387 Rather our case law guides us in evaluatmg the ABA-recommended baseline.

. Dissent at 392-93 (citing In re Purdy, No. S-08996 (Alaska Supreme Court Order, Mar. 26, 1999)).

. See supra Part IV.A.3.

. See In re Ivy, 350 P.3d 758, 762-65 (Alaska 2015) (holding that Rules 3.3 and 3.4 did not apply to Ivy's misconduct "because these rules are intended to govern attorneys 'when they are acting as advocates and not in thelr personal capacities").

. See supra Part IV.A.2.

. See, eg., ABA Stanparns, supra note 3, at § IILC.5.11(b)(recommending disbarnient when attorney engages in "intentional conduct involving dishonesty ... that seriously adversely reflects on the lawyer's fitness to practice"); id. § IILC.6.11 (recommending disbarment when attorney, "with the intent to deceive the court, makes a false statement ... and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding"). o

. See supra Part IV.A.1.c.

. Compare ABA Stawparps supra note 3, at § IILC,.5.11(b) (recommending disbarment regardless of whether misconduct presents risk of ~ serious harm), with id. § TII.C.6.11 (recommending disbarment only if mlsconduct presents I‘lSk of serious harm).

. - At most, In re Purdy presents another example of mitigating factors outweighing aggravating factors. The stipulation in In re Purdy, unlike here, found evidence of several mitigating fac» tors, which we prev1ously have found compelling: cooperation in the disciplinary proceedings (assisting bar counsel in its investigation, consenting to discipline), .a good reputation for sound judgment, honesty, and public service (as evidenced by letters of public. support), other sanctions (criminal sentence, extended probation at place of employment, harmful publicity), and evident remorse. - In re Purdy, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 10-11). The stipulation cited only three aggravating factors, two of which overlap with the presumptive sanction and the ethical violation: a dishonest/selfish motive, a pattern of misconduct, and a prior private admonition for misconduct. Id.

. In re Purdy, No. S-08156 at 1-4 (Alaska Supreme Court Order, Nov. 18, 1998).

. In re Purdy, No. S-08996. The dissent also points to In re Stepovich, 143 P.3d 963 (Alaska 2006). Dissent at 393-94. But like In re Purdy, the brief decision in In re Stepovich does not provide insight into the court's rationale; thus that case also does not facilitate meaningful comparison.

. In re Buckalew, 731 P.2d at 56.

, In re Ivy, 350 P.3d 758, 766 (Alaska 2015).

. Td. at 765-66 & n. 35.

. Id. at 765-66 & n. 34 (issue of attorney's fees waived because it was not addressed in opening brief).

. Id. at 766.

. Alaska Bar R. 16(c)(3)(C) ﬁemphases added).

. Id. (H).

. Id. (B).

. Id. (F).

. Id. (G).

. In re Miles, 339 P.3d 1009, 1018 (Alaska 2014) (quoting In re Shea, 273 P.3d 612, 619 (Alaska 2012)).